UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRYANT ZEFREM DAVIS                                    CIVIL ACTION

VERSUS                                                 NO.  13-3210

TIMMY DUCOTE, WARDEN                                   SECTION "R"(2)

## REPORT AND RECOMMENDATION

This petition for federal habeas corpus relief was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      STATE COURT PROCEDURAL BACKGROUND

On February 15, 2011, an arrest warrant was issued for petitioner Bryant Z. Davis, charging him with aggravated battery using a knife in violation of La. Rev. Stat. 14:34.[2] Davis was taken into custody and made his first appearance before an Orleans Parish Criminal District Court magistrate judge that same day. At Davis's first appearance, the magistrate judge set a $25,000.00 surety bond, issued an order requiring Davis to cease and desist any contact or communication with the victim, and scheduled a follow-up show cause hearing for April 1, 2011. The "docket master" record of the Orleans Parish Magistrate Court reflects that a preliminary hearing was scheduled to occur before the magistrate judge on March 29, 2011, but nowhere does it ever reflect any ruling by the magistrate judge on probable cause.[3]  Instead, the docket master reflects that another show cause hearing was set before the magistrate judge on April 1, 2011, which was then continued to July 15, 2011. On April 21, 2011, however, the docket master reflects that the magistrate judge conducted a status hearing, noted that "defendant [is] still incarcerated," and moved up the previously scheduled July 15th show cause hearing to April 27, 2011 at 3:00 p.m.

Before the scheduled show cause hearing in the magistrate court was conducted, however, on April 27, 2011, the Office of the Orleans Parish District Attorney filed a bill

_____

[2]State Rec. Vol. 1 of 2, Arrest Warrant, 2/15/11.

[3]Id., Orleans Parish Magistrate Court Docket Master.

of information charging Davis with one count of battery with a dangerous weapon; specifically, a knife.[4]  On May 2, 2011, Davis appeared for arraignment in the Orleans Parish Criminal District Court, an attorney was appointed to represent him, and he entered a not guilty plea.[5]  The state record includes a pro se motion to quash marked filed in the district court on June 17, 2011, although the first page of the motion includes Davis's notation "refile: May 17, 2011."[6]  In that motion, Davis argues that the filing of the bill of information was untimely under La. Code Crim. P. art. 701.

On May 10, 2011, Davis' attorney filed an Omnibus Motion for Discovery; Motion for Suppression of Statements, Evidence and Identifications; and Motion for a Preliminary Examination.[7] On July 15, 2011, Davis appeared in court with counsel for a hearing  concerning these motions. After the preliminary hearing, during which the State called the investigating police officer to testify, the state trial court judge found probable cause and set a trial date.[8]

---

[4]Id., Bill of Information, Case No. 505-470, 4/24/11.

[5]Id., Orleans Parish Criminal District Court Docket Master, Case No. 505-470, 5/2/11.

[6]Id., Motion to Quash, Case No. 505-470, 6/25/11.

[7]Id., Minute Entry, Case No. 505-470, 5/10/11.

[8]Id.

On August 16, 2011, the date set for trial, Davis appeared with his counsel in the state court and pleaded guilty as charged.[9]  The State filed a multiple offender bill to which Davis also plead guilty.[10]  The court sentenced Davis to five (5) years in prison at hard labor with credit for time served and recommended him for any available self-help programs.[11]

On October 30, 2011, Davis submitted an application for a "supervisory writ" in the Louisiana Fourth Circuit Court of Appeal, which was actually filed by the court on November 8, 2011 and assigned Case No. 2011-K-1564.[12]  Davis requested that the Fourth Circuit compel the trial court to rule on his previously filed "motion."[13] Although this motion does not appear in the state court record, based on the information set out in the subsequently granted writ, Davis apparently argued in this motion that (1) his prosecution and guilty plea are illegal because he was arrested on February 14, 2011,[14] and remained in custody until the State filed the bill of information on April 27, 2011,

---

[9]Id., Minute Entry, Case No. 505-470,  8/16/11; Felony Waiver of Constitutional Rights Plea of Guilty ("Boykin") Form, 8/16/11.

[10]Id., Case No. 505-470, Multiple Bill Form, 8/16/11; Waiver of Constitutional Rights Plea of Guilty Multiple Offender ("Boykin") Form - La R.S. 15:529.1, 8/16/11.

[11]Id.

[12]State Rec. Vol. 2 of 2, 4th Cir. Writ. App., Case No. 2011-K-1564, 11/8/11.

[13]Id.

[14]The state record reflects that Davis was in fact arrested on February 15, 2011.

in violation of the time limits in La. Code Crim. P. art. 701(B)(1)(a);[15] (2) his trial attorney was unconstitutionally ineffective because she "failed to prepare [the] correct legal analysis" by failing to file a motion to quash based on the Article 701 violation, and because of a "conflict" with his counsel, he was forced to "act as his own attorney" and consequently filed the motion to quash himself; and (3) his guilty plea was illegal because a "strong factual basis" for the plea had not been determined in open court.[16]

On December 12, 2011, the Fourth Circuit granted a supervisory writ for purposes of transferring the pleading to the trial court and ordered the trial court to rule within sixty (60) days and to provide the appellate court with a minute entry of the ruling.[17] On January 4, 2012, the trial court denied the application and mailed the minute entry to the Fourth Circuit.[18] In its judgment entered on January 5, 2012, the trial court denied Davis' Article 701 claim, reasoning that "any alleged violation of Article 701 becomes moot once defendant has been convicted."[19]

On February 29, 2012, Davis served a "Motion for Failure to Comply" in the Fourth Circuit Court of Appeal, which was filed by the court on March 7, 2012, and

---

[15]La. Code Crim. P. art. 701(B)(1)(a) provides that a defendant continued in custody after a felony arrest must be charged by an indictment or information within sixty days of the arrest.

[16]State Rec. Vol. 2 of 2, 4th Cir. Writ. App., Case No. 2011-K-1564, 11/8/11.

[17]Id., 4th Cir. Order, Case No. 2011-K-1564, 12/12/11.

[18]Id., Letter from Judge Robin Pittman, 1/4/11.

[19]Id., Judgment, Case No. 2011-K-1564, 1/5/12.

assigned Case No. 2012-K-0341.[20] Davis argued that the trial court failed to comply with the Fourth Circuit's December 12, 2011 order by (1) failing to comply with Louisiana Code of Criminal Procedure Article 729.5(A)(B)[21] (which does not exist), and by (2) failing to provide a written "proposition" under Louisiana Code of Evidence Article 611(E).[22] On March 15, 2012, the Fourth Circuit denied relief, ruling that the trial court had complied with its previous order.[23]

On March 2, 2012, Davis served a motion for "Sanctions for Failure to File Timely" which was filed in the state Fourth Circuit on March 19, 2012, and assigned Case No. 2011-K-0420, arguing the same grounds asserted in his previous "Motion for Failure to Comply."[24] On April 4, 2012, the Fourth Circuit denied the motion, finding no error in the trial court's ruling and that the trial court had complied with the order.[25]

---

[20]Id., 4th Cir. Writ. App., Case No. 2012-K-0341, 3/7/12.

[21]In the State's "Response to 28 U.S.C. § Petition for Habeas Corpus Relief," Record Doc. No. 13, p. 3, n.10, the State claims that petitioner's argument in this "Motion for Failure to Comply" was that the State had failed to comply by not filing an opposition to Davis's post-conviction claims under La. C. Crim. P. art. 927. However, the State is required to oppose an application for post-conviction relief only if ordered to do so by the district court, and no such order existed in this case.

[22]Id., 4th Cir. Writ. App., Case No. 2012-K-0341, 3/7/12; La. Code Evid. art. 611(E) states: "The plaintiff in a civil case and the state in a criminal prosecution shall have the right to rebut evidence adduced by their opponents."

[23]Id., 4th Cir. Order, Case No. 2012-K-0341, 3/15/12.

[24]Id., 4th Cir. Writ App., Case No. 2012-K-0420, 3/19/12.

[25]Id., 4th Cir. Order, Case No. 2012-K-0341, 4/4/12.

On April 2, 2012, Davis submitted an application for supervisory writ, which was filed in the Fourth Circuit Court of Appeal on April 11, 2012, as Case No. 2012-K-0538.[26] The application was denied on April 18, 2012 by the Fourth Circuit, which found no error in the January 5, 2012, trial court judgment.[27]

On June 6, 2012, Davis submitted an application for post-conviction relief, which the state trial court filed on June 15, 2012.[28]  Davis again argued that (1) his prosecution and guilty plea are illegal based upon the violation of his right to a speedy trial under La. Code Crim. P. art. 701(B)(1)(a), and (2) his trial attorney was unconstitutionally ineffective because she failed to file a motion to quash based upon the Article 701 violation. On June 15, 2012, the trial court denied the motion, ruling that (1) it had previously addressed Davis's ineffective assistance of counsel claim in its ruling of January 4, 2012, and Davis did "not assert any new allegations or issues," and (2) "the State of Louisiana was within the prescribed time limit for institution of prosecution."[29]

On June 27, 2012, Davis served a supervisory writ application entitled "In re: Review Trial Judge" in the Fourth Circuit, which was filed by the court on July 12, 2012,

---

[26]Id., 4th Cir. Writ App., Case No. 2012-K-0538, 4/11/12.

[27]Id., 4th Cir. Order, Case No. 2012-K-0538, 4/18/12.

[28]Id., App. for Post-Conviction Relief, Case No. 505-470, 6/6/12.

[29]Id., Judgment on App. for Post-Conviction Relief, Case No. 505-470, 6/15/12.

and assigned Case No. 2012-K-1035.[30]  Davis argued that the trial court erred in "not

properly responding to" his application for post-conviction relief.[31]  On July 30, 2012, the

Fourth Circuit denied this application.[32]  In its ruling, the Court stated that Davis had

failed to provide the Court with a copy of the application for post-conviction relief that

was denied by the district court on June 15, 2012, but the Court reviewed his application

for supervisory writ of review and found that he was not entitled to relief.[33]

On September 30, 2012, Davis submitted a host of documents to the Louisiana

State Supreme Court, apparently seeking review of the court of appeal's denial of his writ

application in 2012-K-1035.[34]  The supreme court filed the materials on October 8, 2012

and assigned them Case No. 2012-KH-2186.  On December 12, 2012, Davis served the

Louisiana Supreme Court with a supplement to his September 30, 2012 submissions,

which he entitled "Motion to Quash by the Trial Court Ruling in Pretrial Hearing . . . on

---

[30]Id., 4th Cir. Writ App., Case No. 2012-K-1035, 7/12/12.

[31]Id. In a section entitled "Memorandum of Law" Davis seems to have copied segments of various cases and asserted arguments that do not appear to apply to the facts of this case.

[32]Id., 4th Cir. Order, Case No. 2012-K-1035, 7/30/12.

[33]Id.

[34]Id., Writ App. et al., Case No. 2012-KH-2186, 10/8/12.

August 16, 2011 Pleading."[35]  On March 1, 2013, the Louisiana Supreme Court denied Davis any relief.[36]

## II.   FEDERAL HABEAS CORPUS PETITION

On March 29, 2013, Davis dated and signed the instant federal petition under 28 U.S.C. § 2254 for a writ of habeas corpus in this court, which was actually filed by the clerk on May 17, 2013.[37] Although his syntax is difficult to follow and his written submissions are somewhat disjointed, Davis appears to assert a single claim; i.e., that he was convicted in violation of his constitutional rights because the state court magistrate judge refused his case for prosecution during preliminary proceedings before a bill of information was returned against him, but he was nonetheless later prosecuted.

Specifically, Davis's petition and supporting brief make the following allegations: The state court "Magistrate Judge . . . refused petitioner['s] case for institute (sic) for prosecution . . . on April 16, 2011."[38] Nevertheless, the "district attorney allotted the petitioner['s] case before the Orleans Criminal District Court on May 2, 2011,[39] which Davis argues was "unconstitutional . . . false imprisonment by [the] assistant district

---

[35]Id., La S.Ct. Amended Motion to Quash, Case No. 2012-KH-2186, 12/18/12.

[36]State ex rel. Davis v. State of Louisiana, 108 So.3d 1171 (La. 2013).

[37]Record Doc. No. 1 (Form Section 2254 Petition at p. 15 of 26).

[38]Record Doc. No. 1 at p. 5 of 26 (Form Section 2254 Petition at ¶ 12(a)).

[39]Id. at ¶12(b).

attorney because [the] magistrate judge . . . [had] refused [the] case."[40] In his brief attached to the petition, Davis argues that because the magistrate judge had "refused [his] case, . . . it was allotted without probable cause" to the district court in violation of his "2nd [and] 8th amendment [and] due process . . . rights."[41]  Davis writes that "ruling on [his] request [concerning] that issue became moot on [La. Code Crim. P. art.] 701B(1)(A)," seemingly arguing that the state court trial judge erroneously found that any ruling on his motion to quash relating to the timeliness of his prosecution had become moot.  Davis argues further that because the "prosecutor[s] had not met their requirement by La. Criminal Code of Procedure article for institution for prosecution within Rules of Procedure. . . , 2nd and 8th amendment . . . and . . . due process . . . rights violation" occurred.[42]

Thus, the State has concluded in its response[43] that Davis is arguing – as he consistently did in the state court proceedings – that his prosecution and resulting

_____

[40]Id. at p. 15 of 26 (form petition prayer for relief). See also id. at p. 20 of 26 (brief in support of petition at p. 4) ("District attorney had allotted case without probable cause after magistrate judge refused case") (emphasis added).

[41]Id. at p. 19 of 26 (brief at p. 3).

[42]Id. at p. 21 (brief at p. 5).

[43]Record Doc. No. 13 at pp. 5, 10, 14.

incarceration were unconstitutional because the State failed timely to institute his prosecution in compliance with La. Code Crim. P. art. 701.[44]

## III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[45] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Davis's petition, which, for reasons discussed below, is deemed filed in this court on March 29, 2013.[46]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on

---

[44]Id.

[45]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[46]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of this court filed Davis's petition on May 17, 2013, when pauper status was granted. The record reflects that, on March 29, 2013, Davis signed the petition. This is the earliest date on which he could have delivered it to prison officials for mailing to the court.

the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that it "is unable to sufficiently determine whether Davis' § 2254 petition is in fact timely filed."[47] Like the State, I cannot conclusively determine on this unclear state record the precise date on which Davis properly filed his first post-conviction "motion," which is referred to by the state courts but which itself is not in the record, for purposes of instituting a pending state proceeding that would have tolled the one-year AEDPA limitations period. See 28 U.S.C. § 2244(d)(2) ("the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claims is pending shall not be counted toward any period of limitation under this section.").  Under these circumstances and on this less than clear record, I cannot conclude with confidence that the AEDPA statute of limitations period was not tolled in such a way as to render the petition timely filed.

As to exhaustion and procedural default, the State argues that Davis never framed his argument in the state courts concerning the failure timely to institute prosecution under La. Code Crim P. art. 701 in Eighth Amendment terms, so that he failed properly to exhaust, and that his claim is also procedurally defaulted for the same reason. I find, however, that even if his federal claim could be considered unexhausted or procedurally

---

[47]Record Doc. No. 13 at p. 8.

defaulted for that reason, the petition is so meritless that it may nevertheless be addressed and dismissed by this court.  See 28 U.S.C. § 2254(b)(2) (addressing exhaustion).

IV.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.   The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by this Court
> on a question of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts.   Under the
> "unreasonable application" clause, a federal habeas court may grant the writ
> if the state court identifies the correct governing legal principle from this
> Court's decisions but unreasonably applies that principle to the facts of the
> prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);   Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.   "'A federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"   Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).   Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."   Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.   Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.   PROSECUTION DESPITE MAGISTRATE JUDGE'S ALLEGED REFUSAL OF CHARGE

Davis argues that his conviction was unconstitutional because the state court magistrate judge took some sort of action during preliminary proceedings that amounted to refusal of the charges against him and that should have precluded his later prosecution. At times in his written submissions, he indicates that the magistrate judge's alleged action in refusing the charge was based on the State's failure to file an information or indictment against him within the time period provided in La. Code Crim. P. 701. At other places in his written submissions, Davis appears to assert that the magistrate judge found no probable cause to pursue the charges and that preliminary finding somehow precluded Davis's later prosecution. Neither argument has any merit.

Although my research has located no reported decision including a claim quite like the one Davis appears to assert, I find that it presents a mixed question of law and fact for purposes of AEDPA review.

As an initial matter, the state court record contains no indication whatsoever that the magistrate judge took any kind of action that could be characterized as a refusal of the charges. There is no minute entry, order or other indication of any kind establishing that the magistrate judge dismissed the charge for any reason, including lack of probable cause or untimeliness, or even hinted in any way that the charge should or might be refused.

Even if the state court magistrate judge had taken either of the two preliminary actions amounting to refusal of the charges postulated by Davis, no such action would

-15-

have prohibited later institution of the charge via bill of information as reflected in the state court record.   A Louisiana state magistrate judge's preliminary finding of no probable cause that might result in "[d]ischarge of a defendant after a preliminary examination does <u>not</u> preclude the subsequent filing of an indictment, information, or affidavit against him for the same offense." La. Code Crim P. 386 (emphasis added).

Similarly, while Davis is correct in his calculation of the untimeliness of the filing of the bill of information against him under Louisiana procedural law, he is clearly erroneous in his assertion concerning what the magistrate judge did or could have done about it. La. Code Crim. P. art. 701(B)(1)(a) provides: "When the defendant is continued in custody subsequent to an arrest, an indictment or information shall be filed . . . within sixty (60) days of the arrest if the defendant is being held for a felony." In this case, Davis is correct that the filing of the bill of information against him on April 27, 2011, was in fact  71 days after his February 15, 2011, arrest – 11 days beyond the Article 701 limit.

Davis is incorrect, however, not only in his assertion that the magistrate judge "refused" the charges on that basis, but also that the magistrate judge could conceivably have done so.  Louisiana law is absolutely clear that the appropriate remedy for failure to indict or charge by bill of information within 60 days of arrest is release of the defendant from pretrial incarceration or bail obligations, and then only "if <u>after</u> contradictory hearing with the district attorney, <u>just</u> <u>cause</u> for the failure is not shown." La. Code Crim. P. art. 701(B). It is equally clear under Louisiana law that a defendant is <u>not</u> entitled to any

dismissal or quashing of a later indictment or information in these circumstances. State v. Stewart, 983 So.2d 166 (La. App. 4th Cir. 2008). Moreover, once a defendant has been convicted, any violation of the Article 701 time strictures is rendered moot. State v. Bradham, 2012 WL 638033 (La. App. 2nd Cir. 2012); State v. Johnson, 9 So.3d 1084 (La. App. 5th Cir. 2009); State v. Gordon, 896 So.2d 1053 (La. App. 4th Cir. 2004), writ denied, 897 So.2d 600 (La. 2005).

Davis's claim must be rejected insofar as it argues that his prosecution and conviction violated Louisiana procedural law. Even if it had, however, this kind of claim does not warrant federal habeas corpus relief. A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); accord Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996)); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review questions of state law. Estelle, 502 U.S. at 67-68; Gonzales v.

Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir.

1992).

As to any alleged violation of federal constitutional rights, Davis's citations to the

Second (right to bear arms) and Eighth (cruel and unusual punishment) Amendments have

no conceivable application to the 71-day time period between his arrest and charge by bill

of information.  The Due Process Clause "protects persons against deprivations of life,

liberty, or property; and those who seek to invoke its procedural protection must establish

that one of these interests is at stake. A liberty interest may arise from the Constitution

itself, by reason of guarantees implicit in the word 'liberty,'. . . or it may arise from an

expectation or interest created by state laws or policies. . . ." Wilkinson v. Austin, 545

U.S. 209, 221 (2005). Once a liberty interest has been established, the court must "turn

to the question of what process is due . . . . Because the requirements of due process are

'flexible and cal[l] for such procedural protections as the particular situation demands,'"

the Supreme Court has "generally . . . declined to establish rigid rules and instead [has]

embraced a framework to evaluate the sufficiency of particular procedures. The

framework, established in Mathews v. Eldridge, 424 U.S. 319 (1976), requires

consideration of three distinct factors: 'First, the private interest that will be affected by

the official action; second, the risk of an erroneous deprivation of such interest through

the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards; and, finally, the Government's interest, including the function involved and

the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" Wilkinson, 545 U.S. at 224-25 (quoting Mathews, 424 U.S. at 335)(other citations omitted).

In this instance, it is clear that the Constitution itself contains no provision mandating any particular time limit after arrest for institution of formal prosecution by indictment or information. Thus, only the Louisiana law discussed above might serve as the basis for such a protectable liberty interest.  However, not every state statute creates a liberty interest protected by the Constitution. A state statute creates constitutionally protected interests only if it establishes that state officials must take mandatory, non-discretionary actions in connection with the life, liberty or property of citizens.  Olim v. Wakinekona, 461 U.S. 238, 249 (1983); Taylor v. Jagers, 115 F. App'x 682, 684 (5th Cir. 2004) (citing Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989)). Thus, state statutes that vest officials with broad discretion to carry out their official functions do not create constitutionally protected due process interests.

As discussed above, La. Code Crim P. art. 701 is not mandatory in that failure to charge within the provided 60-day time period does not mandate dismissal or quashing of later filed charges. By its very terms, Article 701 permits no relief whatsoever, unless the court, after a contradictory hearing, finds no "just cause" to release the defendant from bail obligations after a hearing, thus vesting the court with discretion as to whether or not to impose even that lesser sanction.  At best, Article 701 creates a conditional interest in

-19-

release from custody or bond obligations within 60 days of arrest that leaves much discretion to state officials.  Thus, Davis had no constitutionally protected liberty interest in having the charges against him automatically quashed or dismissed merely because he was not indicted or charged by bill of information within 60 days of his arrest.

Even if a finding that this conditional liberty interest created by Article 701 mandates that the court proceed to the ultimate due process question, it is clear that the process provided was adequate to protect this interest considering the Mathews framework. First, although the interest will be affected by official action, the risk of erroneous action through the procedures used is low. The magistrate judge constantly monitored Davis's status by scheduling a series of show cause hearings and status conferences during the 60 days after his arrest. The state court record shows that at one of these conferences on April 21, 2011, the 63rd day after the arrest, the magistrate judge determined on the record that Davis was "still incarcerated," and he moved up the next scheduled hearing at which the district attorney must "show cause" to only six (6) days later.  On the date of this last scheduled show cause hearing, April 21, 2011, a bill of information was filed.  These circumstances establish that the existing procedures are adequate to minimize the risk of undue delay, and that additional procedural safeguard would have no probable value.  The record is devoid of any indication of precisely what governmental administrative or fiscal burdens additional procedures would entail, but any would be excessive where – as here – they appear unnecessary.

Finally, assuming that Davis's arguments could be construed so broadly as to encompass some sort of reliance on his federal speedy trial right under the Sixth Amendment, no federal habeas corpus relief would be warranted. As the Supreme Court has explained:

> In <u>United States v. Marion</u>, 404 U.S. 307 . . . , this Court considered the significance, for constitutional purposes, of a lengthy <u>pre</u>indictment delay. We held that as far as the Speedy Trial Clause of the Sixth Amendment is concerned, <u>such</u> <u>delay</u> <u>is</u> <u>wholly</u> <u>irrelevant</u>, since our analysis of the language, history, and purposes of the Clause persuaded us that only <u>a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge</u> . . . engage the particular protections of [the Speedy Trial Clause].

<u>United States v. Lovasco</u>, 431 U.S. 783, 788-89 (1977) (quotation omitted) (emphasis added).

Davis was held based on the February 15, 2011, arrest warrant that first asserted the aggravated battery charge against him for only 11 days beyond the time period provided in state procedural law before he was formally charged by bill of information on April 27, 2011. Thereafter, less than four months lapsed before Davis pled guilty and was sentenced. See <u>Vermont v. Brillon</u>, __ U.S. __, 129 S.Ct. 1283, 1290 (2009)(Supreme Court <u>reversed</u> finding by Vermont Supreme Court that a three-year delay between charges and trial violated defendant's speedy trial rights); <u>Lovasco</u>, 97 S.Ct. at 2046, 2048, 2052 (Supreme Court found 18-month delay between indictment and time defendant "had admitted to Government agents" many of the facts constituting the offense

did <u>not</u> violate defendant's speedy trial or due process rights); <u>Marion</u>, 92 S.Ct. at 466 (Supreme Court <u>reversed</u> lower court's dismissal of indictment for lack of speedy prosecution, finding no violation of defendant's speedy trial or due process rights in a three-year delay between indictment and commission of the offenses).

During the four months between Davis's bill of information and conviction, which itself was less than seven months after his arrest, various pretrial motions were promptly addressed and a preliminary hearing resulting in a finding of probable cause by the state district judge was made. None of the constitutional rights that Davis expressly asserts or might have raised concerning any delay in his prosecution or any alleged absence of probable cause were violated. He has failed to establish that his conviction was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.

## **<u>RECOMMENDATION</u>**

For all of the foregoing reasons, **IT IS RECOMMENDED** that the petition of Bryant Zefrem Davis for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[48]

New Orleans, Louisiana, this _____18th_____ day of February, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[48]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.